IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MARK W.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:18-cv-04064-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 13), the Commissioner's Motion for Summary Affirmance (Doc. 14), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Mark W. filed his applications for disability insurance benefits (DIB) and supplemental security income (SSI) on March 23, 2012 and alleged disability beginning on August 8, 2011. His claims were denied initially and upon reconsideration, and on February 11, 2014, the Honorable Susan Sarsfield (ALJ) issued an unfavorable decision. The Appeals Council (AC) denied review and Mark subsequently filed an appeal in the United States District Court for the Central District of Illinois on January 12, 2016. This Court remanded Mark's claims for a second hearing. On September 26, 2017, ALJ Zapf (née Sarsfield) held a hearing at which

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 8) on the docket.

1

Mark was represented by an attorney and a Vocational Expert (VE) testified. On November 27, 2017, the ALJ issued a partially favorable Decision, finding that Mark became disabled as of April 18, 2017. Because Mark did not file exceptions with the AC, the ALJ's November 27, 2017 Decision[2] became the final decision in this case. Mark timely filed the instant civil action seeking review of the ALJ's Decision on March 22, 2018.

## II

At the September 2017 hearing, Mark was 50 years old and lived alone in an apartment in Rock Island, Illinois. In his October 2011 Form SSA-3368, Mark claimed the following physical conditions limited his ability to work: diabetes; heart problems; and kidney problems. AR 264. At the hearing, Mark testified he was 6'4", 285 pounds, and had a twelfth grade education. In terms of his physical conditions, Mark testified that he previously almost died when his blood sugar dropped, and he awoke in the emergency room. At the time of that event, it was discovered that his "heart was bad." AR 696. He saw a cardiologist and a kidney specialist. His kidney doctor told him he was 50 years old with a 100-year-old man's body. Nurse practitioner Brett Josie managed Mark's diabetes. Mark testified he had gout "real bad." AR 702.

Mark sometimes used a cane due to loss of balance. His symptoms included black outs, chest pains, and aching kidneys, and Mark went to the emergency room for his conditions "[a]ll the time." AR 698. He took heart medicine, kidney medicine, high blood pressure medicine, and neuropathy medicine. He also took medicine for depression. With regard to depression, Mark testified he avoided people, and he was angry and always sad. His friend, however, did come over and help him take care of household activities and went grocery shopping with him. Mark engaged in self-care.

---

[2] This is the decision at issue in this case.

He had not been sleeping because "[i]t seem like I got a lot on my mind." AR 704. Mark was told loss of sleep was a side effect of his depression medicine.

Upon questioning by his attorney, Mark testified that the main thing that would prevent him from doing a job with simple tasks was his depression and anxiety. Those things would cause him to "lash out" in a job. AR 706. If he had to sit for an hour or two, Mark's legs and back would start to hurt "a lot." AR 707. He again testified that the pain he felt was like "fiberglass all over my body." *Id*. Mark testified he had not seen someone specifically for his depression and anxiety because he was on a waiting list. "Paranoia" about his heart and legs would prevent Mark from walking more than half a mile. AR 709.

After the ALJ and Mark's attorney questioned him about his physical and mental issues, the VE was questioned. The ALJ first asked the VE to consider a hypothetical individual:

> Of the same age, education, and having the same past work as this Claimant limited to a range of light work with occasional climbing ramps and stairs, no climbing ladders, ropes, or scaffolds, occasional stooping, crouching, crawling, balancing, avoid concentrated exposure to extremes and cold and heat, fumes, odors, dusts, gases, and poor ventilation, limited to simple, routine, repetitive tasks of unskilled work that can be easily resumed if the Claimant has momentary deficits in concentration and attention, only occasional interaction with coworkers, the public, and supervisors of a brief and superficial nature. No more than occasional changes in work processes and procedures.

AR 711. The VE responded that there was past work Mark could perform and the VE identified other light and sedentary jobs that the hypothetical individual could perform. The ALJ asked, "How about if we go, move to sedentary work, are there jobs that could be performed within that hypothetical at the sedentary level?" AR 713. The VE responded:

> Looking at, on production inspection related jobs we're looking at about 12,000 in the U.S. An example there would be a shadowgraph scale operator, 737.687-126. Production workers, that's going to be right

around 30,000. And there an example would be a stone setter, 735.687-034. And then in hand packaging activity approximately 21,000. And an example would be an ampoule sealer, 559.687-014. And that'd be about it.

*Id.* The ALJ then questioned the VE about off-task behavior. The VE confirmed his responses were consistent with the DOT and his own professional experience. AR 714.

Mark's attorney proceeded to question the VE about the basis for the VE's sedentary job numbers. The ALJ then asked if the sedentary jobs cited could still be performed if the individual had to stand at his workstation after 30 minutes "for, look for after an hour for up to two minutes just to adjust position." AR 717. The VE responded in the affirmative and explained that "wouldn't be enough to even reduce the numbers." *Id.* Mark's attorney asked the VE whether the individual limited to sedentary work who was also required to elevate his legs at various time throughout the day would still be able to work the cited jobs. The VE responded in the negative. The VE also answered that there would be no reason that the individual could not elevate his feet on breaks and at lunchtime.

### III

In her Decision, the ALJ determined since the alleged onset date of disability (August 8, 2011), Mark had the following severe impairments: diabetes; hypertension; cardiomyopathy; chronic kidney disease; obesity; affective disorder; and anxiety disorder. AR 642. The ALJ determined Mark had the following residual functional capacity (RFC) prior to April 18, 2017 (the date Mark became disabled):

> [C]laimant had the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to extreme temperatures or respiratory irritants; performance of simple, routine, repetitive tasks of unskilled work that can be easily resumed if the claimant has momentary deficits in concentration and attention; occasional interaction with coworkers, supervisors and the public that is

>   brief and superficial in nature; and no more than occasional changes in work processes and procedures.

AR 648-49. In support of that RFC finding, the ALJ discussed Mark's October 2011 Disability Report, an October 2011 ADL questionnaire completed by Mark's girlfriend, Mark's May 2012 Disability Report, Mark's June 2012 physical impairments questionnaire, his June 2012 ADL questionnaire, his September 2012 Disability Report, his daughter's November 2013 letter stating Mark deserved disability benefits, Mark's November 2013 testimony, and his September 2017 testimony. The ALJ also addressed Mark's medical records which documented diabetes, obesity, chronic kidney disease, left ventricular dysfunction, hyperlipidemia, and hypertension. The ALJ recited results of an April 2011 myocardial perfusion scan which was abnormal, a normal EKG response to stress, and Mark's assessed chronic kidney disease, stage 3. In September 2011, Mark was evaluated for his cardiomyopathy. At that time he denied chest discomfort and stated he had not experienced any palpitations, tachycardia, syncope, or pre-syncope. The ALJ noted the times when Mark had high blood pressure. The ALJ also detailed the evidence pertaining to Mark's diabetes and his complaints of depression.

In January 2017, Mark complained of an irregular heartbeat/palpitations and an episode that seemed like a panic attack. At that time he again had elevated blood pressure. At that time, an EKG revealed sinus bradychardia, borderline left axis deviation, and nonspecific T abnormalities. He was advised to follow up with a cardiologist. On January 11, 2017, Mark complained of intermittent shortness of breath. His last cardiac test had been in 2011. A January 25, 2017 myocardial perfusion scan revealed decreased perfusion in the inferior wall of the heart indicating either scarring from a previous infarct or artifact. AR 665. A 48-hour Holter monitor in early February 2017 revealed a baseline normal sinus rhythm. The ALJ next addressed the medical source opinions dated between November 2011 and April 2013. The ALJ determined the "available evidence [did] not substantiate the alleged

5

severity of [Mark's] impairments" where there was a 2011 cardiac workup and his cardiac condition was "stable, and generally asymptomatic, until January 2017, when testing indicated little change since the prior testing in 2011, although exercise capacity was diminished due to dyspnea." AR 673 (emphasis in original).

The ALJ then determined Mark had the following RFC beginning on April 18, 2017:

> [C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to extreme temperatures or respiratory irritants; performance of simple, routine, repetitive tasks of unskilled work that can be easily resumed if the claimant has momentary deficits in concentration; occasional interaction with coworkers, supervisors and the public that is brief and superficial; and no more than occasional changes in work processes and procedures.

AR 674. In support of that second RFC beginning on April 18, 2017, the ALJ discussed Mark's medical records from 2017 which she identified as "limited" but "with numerous records from January 2017, lab tests in February 2017, and then nothing until a recent medical source statement." AR 674. The ALJ discussed that the January 2017 records provided Mark reported issues with heart palpitations and shortness of breath which were "symptoms that had not really been an issue since 2011, when he underwent an extensive cardiac workup." *Id*. On January 11, 2017, Mark complained of intermittent shortness of breath of variable duration and he said the shortness of breath was aggravated by moderate activity after climbing ten stairs and was relieved by rest. A January 25, 2017 myocardial perfusion scan revealed "decreased perfusion in the inferior wall of the heart indicating either scarring from a previous infarct or artifact." *Id*. at 675. His left ventricular ejection fraction results were not much different from testing in 2011, but his ejection fraction was slightly reduced from 45% to 42%. During an exercise cardiolite stress test on January 27, 2017, Mark could not

exercise much due to dyspnea and the test was stopped after five minutes and 27 seconds because of the dyspnea. PA-C (physician's assistant) Brett Josie's August 1, 2017 Physical Residual Functional Capacity Questionnaire (MSS) provided that Mark's prognosis was fairly good if his medical conditions were controlled. *Id.*, *citing* Exhibit 36F. He provided Mark's symptoms were dizziness and fatigue. Josie said Mark's diagnoses were chronic kidney disease, diabetes, coronary artery disease, hypertension, and anxiety. The ALJ gave Josie's MSS limited weight for several reasons, including that Jose provided no rationale for his opinion that Mark's symptoms would likely be severe enough to interfere with the attention and concentration needed to perform even simple work tasks fifteen percent of the workday. AR 676. The ALJ also noted there was no medical support for Josie's conclusion where no medical records from Josie were provided.

> The ALJ stated Mark would still be limited as set forth in the light exertion RFC:
>
> However, giving the claimant all reasonable benefit of the doubt regarding the increased dyspnea with moderate activity reported in January 2017 (and which appears to still be an issue for the claimant), as well as some benefit of the doubt regarding his recent testimony about pain, weakness, and problems with prolonged standing and walking, the undersigned adopts PAC Josie's opinion that standing and walking would be limited to two hours of an eight-hour workday. Due to increased dyspnea with moderate activity, as well as giving the claimant some benefit of the doubt regarding his testimony about leg pain, weakness, and swelling, as well as possible fatigue from a combination of pain, shortness of breath, medication side effects, and poor sleep (secondary to depression and anxiety, medication, pain, etc.), it would be reasonable to restrict the amount of weight the claimant was expected to lift and carry. Accordingly, he would be limited to lifting and carrying up to ten pounds occasionally and less than ten pounds frequently. Overall, the evidence supports a conclusion that the claimant's exertional ability has been reduced from the light to the sedentary level. Since April 18, 2017, (attainment of age 50), the claimant has been capable of performing a limited range of essentially unskilled socially undemanding sedentary work.

AR 676.

The ALJ then acknowledged Mark was a younger individual prior to the established disability onset date but his age category changed to an individual closely approaching advanced age on the established disability onset date (April 18, 2017). The ALJ explained prior to that date, the Medical-Vocational Rules (Grids) supported a finding that Mark was not disabled whether or not he had transferable job skills. However, beginning April 18, 2017, Mark had not been able to transfer job skills to other occupations. The ALJ determined there were jobs that existed in significant numbers in the national economy that Mark could have performed prior to April 18, 2017 considering his age, education, work experience, and RFC. The ALJ explained how the Grids were to be considered in Mark's case and that she questioned a VE at the hearing to determine the extent to which Mark's limitations eroded the unskilled light occupational base. The ALJ listed the jobs the VE identified, both light and sedentary, and the number of those jobs nationally. The ALJ stated:

> Based on the testimony of the [VE], the undersigned concludes that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and [RFC], the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to April 18, 2017, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule in the [Grids].

AR 678.

Next, the ALJ concluded that, "Beginning on April 18, 2017, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. The ALJ elaborated, "Even if the claimant had the [RFC] for the full range of sedentary work, a finding of 'disabled' is directed by [the Grids]." *Id*.

## IV

Mark argues the ALJ's RFC was not supported by substantial evidence.

### A

8

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566; 416.966[3]. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

9

The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Mark claims error on the ALJ's part at Step Four.

**B**

Mark makes one overarching argument that the ALJ's RFC was not supported by substantial evidence. He argues, in particular, that the ALJ provided no rationale as to why his physical limitations only reduced to the sedentary level on his 50th birthday, the ALJ played doctor, and the ALJ attempted to avoid problematic VE

10

testimony regarding the latter's jobs numbers by finding Mark limited to sedentary work only as of his fiftieth birthday. In opposition, the Commissioner argues, first, substantial evidence supports the ALJ's RFC assessment and, second, substantial evidence supports the ALJ's Step Five findings.

Even though the ALJ wrote a lengthy Decision (40 pages), her determination that Mark's RFC reduced to sedentary as of his 50th birthday is nevertheless not supported by substantial evidence, and therefore, the ALJ's determination that Mark had the RFC to do light work until the day before his 50th birthday is insufficiently supported. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). True, the "threshold for such evidentiary sufficiency is not high," but in this case, the ALJ's determination that Mark's RFC reduced to sedentary only as of his 50th birthday appears entirely untethered from the record evidence. Stated differently, the ALJ chose an arbitrary date – Mark's 50th birthday – to assess him as capable of only sedentary work. Mark characterizes the ALJ's reasoning as "nonsensical." Plf's MSJ (Doc. 13-1 at pg. 11). He asks why the ALJ only found him capable of sedentary work as of his 50th birthday where the ALJ explicitly stated that "giving the claimant all reasonable benefit of the doubt regarding dyspnea with moderate activity reported in January 2017" she limited him to sedentary work. Mark further points out that the ALJ's rationale for her sedentary RFC finding consisted almost entirely of evidence from January 2017, three months prior to Mark's 50th birthday.

In support of the RFC finding she made as of April 18, 2017, the ALJ discussed the available medical records from 2017, specifically the "numerous records" from January 2017 and lab tests in February 2017. AR 674. She stated that "the available records suggest that the claimant has experienced a worsening of symptoms and some diminishment in functioning in 2017." *Id.* The ALJ then detailed an August 1,

11

2017 Physical Residual Functional Capacity Questionnaire completed by PA-C Josie and gave that MSS "limited weight." AR 675. The ALJ concluded:

> Overall, the evidence supports a conclusion that the claimant's exertional ability has been reduced from the light to the sedentary level. Since April 18, 2017 (attainment of age 50), the claimant has been capable of performing a limited range of essentially unskilled socially undemanding sedentary work.

AR 676. The Court cannot trace the path of the ALJ's reasoning between the evidence which she highlighted and discussed and her conclusion that Mark's exertional ability reduced only as of April 18, 2017. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). As Mark puts it, his 50th birthday has no significance in his medical history as that history was presented and discussed by the ALJ.

The Commissioner's attempt to refute the fact that the ALJ arbitrarily chose Mark's 50th birthday as the date his RFC reduced to the sedentary exertional level does not convince the Court otherwise. The Commissioner accurately cites to SSR 83-20[4] which provides, in relevant part, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling [with slowly progressive impairments]." SSR 83-20, at *2. Indeed, "In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id*. However, the ALJ did not explain that such was the situation with Mark's impairments – that one or more was a slowly progressive impairment for which the ALJ had to infer the onset date. What the ALJ *actually* stated was that "[s]ince April 18, 2017 (attainment of age 50), the claimant has been capable of performing . . . sedentary work." AR 676. Post-hoc

---

[4] SSR 83-20 was rescinded and replaced October 2, 2018 by SSR 18-1p and SSR 18-2p.

rationalization is not permitted. *See Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence").

Nor does the ALJ's discussion of the relevant medical evidence dated January 2017, February 2017, and August 1, 2017 and Mark's September 2017 testimony lend support for the Commissioner's argument that the ALJ merely inferred an onset date (per SSR 83-20) three months *after* the earliest of those 2017 records and five months *before* Mark's 2017 testimony (to which the ALJ gave "some benefit of the doubt"). AR 676. The ALJ's decision to choose a meaningful birthday under the Medical-Vocational Guidelines (Grids)[5] – Mark's attainment of age 50 – as the date on which Mark became capable of only sedentary work makes the ALJ's selection of that particular date even more suspect.

Mark propounds a theory that the ALJ chose Mark's 50th birthday as an attempt to avoid "problematic testimony regarding the VE's jobs numbers." Plf's MSJ (Doc. 13-1 at pg. 12). He provides a detailed analysis to explain how the VE's estimates as to the number of jobs available to an individual with a sub-sedentary RFC were "grossly inaccurate" at the hearing. Plf's MSJ (Doc. 13-1 at pg. 13). The Commissioner argues that Mark's arguments about the vocational evidence are waived for two reasons: 1) Mark relies upon the Grids to prove disability as of his 50th birthday and therefore cannot also argue that the findings of fact that underpin those rules are wrong or outdated; and 2) Mark did not raise these arguments at the administrative level. The Commissioner contends that even if not waived, Mark's argument at Step Five fails because there is no record evidence that contradicts the VE's estimates and he provided a reasonable basis for his testimony. Mark points out

---

[5] See 20 C.F.R., Part 404, Subpart P, App. 2 § 201.00(g): "Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains . . . ."

in his Reply that he argues the VE's testimony was problematic merely to illustrate a possible rationale as to why the ALJ found him capable of sedentary work only as of his 50th birthday.

The Court will not delve into the Commissioner's arguments that Mark either waived any challenge to the VE's testimony or the VE's testimony was sufficiently reliable. Ultimately, the ALJ simply did not explain her reasons for choosing the arbitrary date of Mark's 50th birthday as the date upon which his RFC was reduced to the sedentary level. There may be reasons in the record why the ALJ determined that date to be of significance, but the ALJ did not articulate any in her Decision. It is not the Court's duty to provide the reasons for the ALJ's conclusions. The ALJ "must build a logical bridge from the evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). This matter must be remanded.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 13) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on April 29, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE